IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| STEVE SANDHOLM,<br>   Plaintiff,<br><br>vs.<br><br>THE DIXON PUBLIC SCHOOL DISTRICT<br>NO. 170, CAROLYN BRECHON, JAMES<br>HEY, THOMAS BALSER and WOODY<br>LENOX,<br>   Defendants. | Case No. 09 C 50119<br><br>Magistrate Judge<br>P. Michael Mahoney |

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

Plaintiff was previously employed at Dixon High School as the boys Head Basketball Coach and the Athletic and Activities Director ("Athletic Director"). (Compl. ¶ 1.) Plaintiff alleges that on September 5, 2007, Dixon Public School District No. 170 ("District 170") entered into a written agreement to employ Plaintiff as Head Basketball Coach and Athletic and Activities Director until the conclusion of the 2010–2011 school year. (*Id*. ¶ 5.) However, on April 23, 2008, the Dixon School District Board of Education (the "board") voted to remove Plaintiff as Head Basketball Coach. (*Id*. ¶ 11.) Then, on September 17, 2008, the board members took action to remove Plaintiff from his position as Athletic Director. (*Id*. ¶ 13.)

Plaintiff's complaint alleges that District 170 violated the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq*, when the board voted to remove Plaintiff from the position of head coach and subsequently filled that position with a younger man. (*Id*. ¶ 14.)

1

Plaintiff's complaint also alleges that District 170 and certain individual board members violated his procedural due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983 when the board removed him from his position as Athletic Director.

Before the court is Plaintiff's motion to compel the audiotapes of the September 5, 2007 and the September 17, 2008 executive school board meetings. Defendants have produced for an in camera inspection transcripts of executive meetings of the school board for the following dates: March 19, 2008, April 14, 2008, April 23, 2008, July 9, 2008, and September 17, 2008.[1] Defendants claim that each transcript in its entirety is subject to the Illinois Open Meetings Act, and that portions of the transcripts are subject to the deliberative process privilege. Defendants also claim that portions of the transcripts are subject to the attorney-client privilege. Defendants have not produced, and do not discuss in their response, the audiotapes for the September 5, 2007 executive meeting.

## II. Illinois Open Meetings Act Privilege

The Illinois Open Meetings Act provides that, absent the governmental entity's consent, "the verbatim record of a meeting closed to the public shall not be open for public inspection or subject to discovery in any administrative or judicial proceeding other than one brought to enforce this Act." 5 *Ill. Comp. Stat.* 120/2.06(e). The privilege memorialized in the Illinois Open Meetings Act does not exist in the federal common law. *Kodish v. Oakbrook Terrace Fire Protection Dist. et al.*, 235 F.R.D. 447, 451 (N.D. Ill. 2006). Where the principle claim arises

---

[1]The transcripts for the March 19 and September 17 meetings each have a break in the middle where one audiotape ended and another audiotape began. The transcription of the second audiotape restarts the page numbering with "Page 1." Thus, when citing to the transcripts for the March 19 and September 17 meetings, the court will use "part one" to refer to the transcript for the first audiotape, and "part two" to refer to the transcript for the second audiotape.

under federal law, the proceedings in this court are governed by the principles of the federal common law. *Fed. R. Evid.* 501(a); *Memorial Hosp. for McHenry County v. Hon. Milton I. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). However, "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be done at no substantial cost to federal substantive and procedural policy." *Sronkoski v. Schaumburg Sch. Dist., No. 54*, 08-C721, 2009 WL 1940779, 2009 U.S. Dist. LEXIS 57803, at *11 (N.D. Ill. July 1, 2009) (*quoting Memorial Hosp.*, 664 F.2d at 1061). The Seventh Circuit has indicated that courts should "weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Memorial Hosp.*, 664 F.2d at 1062–61.

Defendants assert that the Illinois Open Meetings Act privilege applies to the entire transcript for each of the executive board meetings held on March 19, April 14, April 23, July 9, and September 17, 2008. The claims in this case arise under federal law and, thus, the guiding principles are those of federal common law. However, the court may apply the Illinois Open Meetings Act privilege in this case if the importance of the policy furthered by the privilege outweighs the need for truth.

It appears to the court that the policy underlying the Illinois Open Meetings Act privilege is similar to that of the federal deliberative process privilege: to promote frank discussion of legal and policy matters. *See Sronkoski*, 2009 U.S. Dist. LEXIS 57803, at *13–14; *see also infra* Section III. In *Kodish*, the court declined to recognize the Illinois Open Meetings Act privilege. *Kodish*, 235 F.R.D. at 452. The plaintiff in *Kodish* was a firefighter that brought a claim under

3

42 U.S.C. § 1983 alleging that the Fire District violated his civil rights when it terminated him. *Id*. Plaintiff sought disclosure of the audiotape recorded during the closed session meeting at which the Board of Trustees decided to terminate his employment. *Id*. The court found that disclosure of the tape would "likely aid in uncovering the facts relied upon by the Board of Trustees to terminate Plaintiff," and that the "interests served by the open meeting privilege [were] overcome by the need for probative evidence." *Id*.; *see Sronkoski*, 2009 U.S. Dist. LEXIS 57803, at *13–14 (finding that the need for information in a case brought under the Americans with Disabilities Act outweighed a defendant school board's interests in nondisclosure under the Illinois Open Meetings Act). The court also found that the attorney-client privilege adequately protected the interests served by the Illinois Open Meetings Act privilege. *Id*.

Defendants in this case argue that the court should follow *Tumas*. The court in *Tumas* held that the plaintiff, a former employee of the defendant school board, could not get transcripts of closed session school board meetings because such discovery was protected by the "clear language" of the Illinois Open Meetings Act. *Tumas*, 2007 U.S. Dist. LEXIS 56242, at *27–28, 32. The court in *Tumas* did not elaborate on the policy justifications underlying the Illinois Open Meetings Act privilege. It relied only on the "clear language" of the Act. It did not balance the plaintiff's interest in the information against the defendant's interest in nondisclosure. *See id*. at *27–32. Because the court must balance the interests in this case, the reasoning in *Tumas* offers little guidance.

After review of the transcripts, the court finds that the material contained therein is of little relevance to the claims set forth in Plaintiff's complaint. Although the discussions at times pertained to Plaintiff and his employment, Plaintiff's age is not discussed and the transcripts do

4

not establish whether Plaintiff's due process rights were violated. They offer little, if anything, to further Plaintiff's claims. It appears that the importance of the policy underlying the Illinois Open Meetings Act privilege outweighs Plaintiff's need for the information contained in the transcripts for March 19, April 14, April 23, July 9, and September 17, 2008. Under these circumstances, the court denies Plaintiff's motion to compel. For completeness, the court will address Defendants' assertions of the deliberative process privilege and the attorney-client privilege.

**III. Deliberative Process Privilege**

"The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). The privilege proscribes to protect "frank discussion of legal and policy matters [that are] essential to the decision-making process of a governmental agency." *Id*. A two-step inquiry is used to determine whether information is protected from disclosure under the privilege. *Sronkoski*, 2009 U.S. Dist. LEXIS 57803, at *3. First, the governmental agency must show that the privilege applies. *Id*. The privilege only applies to "pre-decisional" and "deliberative" matters. *Id*. at *4 (*citing Tumas v. Bd. of Ed. of Lyon Twp. High Sch. Dist. No. 204 et al.*, No. 06-C1943, 2007 WL 2228695, 2007 U.S. Dist. LEXIS 56242, at *5 (N.D. Ill. July 31, 2007)). "Communications are pre-decisional if the 'information was generated before the adoption of an agency policy,' and deliberative if they involve the 'give and take of the consultative process.'" *Id*. (*quoting Tumas*, 2007 U.S. Dist. LEXIS 56242, at *5)). If the privilege applies, the court will still order disclosure if the plaintiff demonstrates a "particularized need" that outweighs the defendant's need for confidentiality. *Id*. at *3.

5

Defendants assert that the deliberative process privilege applies to pages 4–5, 10–11, and 13–24 of the April 14 transcript, pages 2–5 of the April 23 transcript, pages 8–22 of the July 9 transcript, and pages 6–17 of the September 17 transcript.[2] All of these pages contain discussions that took place during the board's executive sessions. The discussions pertained to board policies and actions, and are all pre-decisional. The board members debated topics of importance to District 170, and then voted to take certain actions. Because there was a consultative give and take regarding the topics under discussion, the discussions were deliberative. Thus, Defendants have demonstrated that the selected portions of the transcripts are subject to the deliberative process privilege.

Plaintiff claims that the transcripts are material to his allegations that he entered into a contract to serve as Athletic Director until the end of the 2010–2011 school year, and that he was removed from that position in violation of his constitutional due process rights. (Pl.'s Mot. ¶ 7.) Plaintiff is incorrect. The discussions that appear on the transcripts do not address Plaintiff's age and do not establish whether his due process rights were violated. They offer little, if anything, to further Plaintiff's claims. The Plaintiff has not shown a particularized need for this information. Defendants' interest in having frank discussions regarding the decisions with which they are entrusted outweighs Plaintiff's need for the information in this case. Under these circumstances, Plaintiff's motion to compel is denied as to the information contained on pages 4–5, 10–11, and 13–24 of the April 14 transcript, 2–5 of the April 23 transcript, 8–22 of the July 9 transcript, and 6–17 of the September 17 transcript.

---

[2]Part two of the September 17 transcript only has seven pages. Thus, the court assumes that Defendants are asserting the deliberative process privilege for pages 6–17 of part one of the September 17 transcript.

## IV. Attorney-Client Privilege

The attorney-client privilege exists "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390. The principles of the privilege, as adopted by the Seventh Circuit, are the following:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (citing 8 *John Henry Wigmore*, *Evidence in Trials at Common Law* § 2292 (John T. McNaughton rev. 1961)). Communications by an attorney to a client are subject to the privilege "where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client." *Naik v. Boehringer-Ingelheim Pharm.*, No. 07-C3500, 2008 WL 4866015, 2008 U.S. Dist. LEXIS 47567, at *4 (N.D. Ill. June 19, 2008) (internal quotations omitted).

"[T]he mere attendance of an attorney at a meeting does not render everything said or done at that meeting privileged." *Kodish*, 235 F.R.D. at 453 (*citing Larson v. Harrington*, 11 F. Supp. 2d 1198 (E.D. Cal 1998)). A privileged communication to an executive who relays that "legal advice to another who shares responsibility for the subject matter underlying the consultation" does not lose its status as privileged. *Id.* (internal quotes omitted) (*citing Weeks v.*

*Samsung Heavy Ind. Co., Ltd.*, No. 93-C48899, 1996 WL 341537, 1996 U.S. Dist. LEXIS 8554, at *12 (N.D. Ill. June 20, 1996)). "Management personnel should be able to discuss the legal advice rendered to them as agents of the corporation." *Weeks*, 1996 U.S. Dist. LEXIS 8554, at *12). A school board member relaying legal advice obtained from the school board's attorney to other board members is analogous to management personnel of a corporation relaying legal advice to other members of management. *See Kodish*, 235 F.R.D. at 454. The party asserting the privilege has the burden of proving all its essential elements. *Evans*, 113 F.3d at 1461.

Defendants assert that the attorney-client privilege applies to portions of pages 2–3 and page 10 of the March 19 transcript, page 6 of the April 23 transcript, pages 8–22 of the July 9 transcript, and pages 6–19 of the September 17 transcript. In many instances, Defendants marked the specific passage in the transcript for which they are asserting the attorney-client privilege.

As mentioned above, *supra* note 1, the March 19 transcript is divided into two parts. Defendants did not indicate whether they are asserting the attorney-client privilege for either pages 2–3 of part one or pages 2–3 of part two. Nothing is marked. Regardless, pages 2–3 of neither part contain communications to or by an attorney, or communications relaying legal advice obtained from an attorney. There is no information subject to the attorney-client privilege on either pages 2–3 of part one or pages 2–3 of part two of the March 19 transcript.

The marked passage on page 10 of the March 19 transcript for which Defendants assert the attorney-client privilege begins on line four and ends on line 11. In large part, the passage consists of a statement by James Brown, the superintendent, relaying to the school board what the school board's attorney said regarding a particular personnel matter. That communication

was given for the purpose of providing legal advice. However, the last sentence of the passage does not include a privileged communication from an attorney being relayed by Brown to the board members. The information in the last sentence is attributable to Brown, and Brown alone. As such, the court finds that the two marked sentences on page 10 starting on line four and ending on line nine are subject to the attorney-client privilege. The last sentence marked by Defendant, which starts on line nine and ends on line 11, is not subject to the attorney-client privilege.

The marked passage on page six of the April 23 transcript for which Defendants assert the attorney-client privilege begins on line five and ends on line nine. The middle sentence of the passage, beginning on line six and ending on line eight, constitutes a board member relaying to the board legal advice given by an attorney. That sentence is subject to the attorney-client privilege. However, the first and last sentences marked by Defendants are not communications from an attorney. They are just statements made to the board by the board member. They are not covered by the attorney-client privilege.

Defendants assert that the material beginning on line 15 of page eight through page 22 of the June 9 transcript is subject to the attorney-client privilege. This assertion is over broad. The material over which the privilege is asserted constitutes a discussion among the board members regarding Plaintiff's retirement from the Athletic Director position. The vast majority of the discussion contained on pages 8–22 is a deliberation among board members, and contains no communications made by an attorney. However, there is one sentence in which Doug Creason, a board member, relays to the other board members a statement made by an attorney that constituted legal advice given to the board. That sentence begins on line 15 and ends on line 17

9

of page eight. That sentence is subject to the attorney-client privilege.

Finally, Defendants assert that the material contained on pages 6–19 of part one of the September 17 transcript is subject to the attorney-client privilege. This assertion is over broad. The material starting on page six and ending on line 10 of page 17 constitutes a discussion among board members regarding their options for Plaintiff's employment status. Although the board's attorney is present for the discussion, he does not give any legal advice, nor is any asked from him by the board. The discussions of the board through line 10 of page 17 are not subject to the attorney-client privilege.

After the board discusses its options, the board's attorney gives a statement. The attorney's statement begins at line 11 on page 17 and ends on line five of page 19. The statement constitutes legal advice given from legal counsel to his client. Thus, the portion of part one of the September 17 transcript starting at page 17, line 11, and ending on page 19, line five, is subject to the attorney-client privilege.

## V. Conclusion

The court denies Plaintiff's motion to compel. The court finds that the transcripts for March 19, April 14, April 23, July 9, and September 17, 2008 are subject to the Illinois Open Meetings Act privilege in this case. Further, the court finds that Plaintiff has not demonstrated a particularized need for the information contained on pages 4–5, 10–11, and 13–24 of the April 14 transcript, 2–5 of the April 23 transcript, 8–22 of the July 9 transcript, and 6–17 of the September 17 transcript. Those sections are protected by the deliberative process privilege. Finally, the court finds that the attorney-client privilege applies to the following material: (1) the two marked sentences on page 10 of the March 19 transcript that start on line four and end on

line nine; (2) the marked sentence on page six of the April 23 transcript that starts on line six and ends on line eight; (3) the marked sentence on page eight of the June 9 transcript that begins on line 15 and ends on line 17; and (4) the marked portion of part one of the September 17 transcript that begins on page 17, line 11, and ends on page 19, line five. The court will return the transcripts to Defendants' attorney. Defendants' attorney is directed to preserve the transcripts for the duration of this litigation.

ENTER:

_____
P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: March 10, 2010