# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 50119 | **DATE** | 3/10/2011 |
| **CASE TITLE** | Steve Sandholm vs. The Dixon Public School District No. 170, et al. | | |

**DOCKET ENTRY TEXT:**

For the foregoing reasons, defendants' motion for summary judgment is granted on all counts. Judgment is entered in favor of defendants and against plaintiff on all counts. All pending motion are denied as moot. This case is terminated.

*/s/ Philip G. Reinhard*

■[ For further details see text below.]

Electronic Notices.

## STATEMENT - OPINION

Plaintiff, Steve Sandholm, brings this action against defendants, Dixon Public School District No. 170 ("District") and four individuals, Carolyn Brechon, James Hey, Thomas Balser, and Woody Lenox ("Individual Defendants"). The District is plaintiff's employer and the Individual Defendants are named because of actions they took while members of the District's school board, its governing body. Plaintiff claims the District violated the Age Discrimination in Employment Act, 29 U.S.C. § 623 et seq. ("ADEA") (Count I) when it removed him as head high school basketball coach and that it denied him his Fourteenth Amendment procedural due process rights when it terminated his services as high school athletic and activities director in violation of 42 U.S.C. § 1983 ("Section 1983") (Count II). He claims the Individual Defendants likewise violated Section 1983 by denying him procedural due process (Count III). Jurisdiction is proper under 28 U.S.C. § 1331. Defendants move for summary judgment.

Plaintiff began working for the District as head basketball coach and PE teacher at Dixon High School in the 1999-2000 school year. In the 2005-06 school year, plaintiff became the athletic director, gave up his teaching position and remained the head basketball coach. On September 5, 2007, plaintiff submitted his irrevocable letter of retirement stating he would retire after the 2010-11 school year. This irrevocable letter of retirement entitled him to six percent raises per year until his retirement. The parties dispute whether this six percent placed a cap on his maximum earnings from all sources, including special events he ran, or only applied to his base salary. Taking the evidence most favorably to plaintiff, he was entitled to six percent annual increases on his base salary and was still allowed to earn extra money from running special events.

The District chose not to renew plaintiff's contract as head basketball coach following the 2007-08 school year. Sometime prior to this decision a parent, Richard Kuecker, approached Michael Grady, the high school principal, with complaints about plaintiff's coaching, sideline decorum and detrimental conduct toward the team. Grady relayed Kuecker's complaints to Jim Brown, the District's superintendent of schools. In late February of 2008, Kuecker went to the press with a letter entitled "Hostages in the Gym" along with a plea to all parents and students to call Grady, Brown and the Board of Education to voice complaints about plaintiff. Shortly thereafter a website appeared devoted to removing plaintiff as coach and a billboard advocating his removal was purchased.

At the March 19, 2008, school board meeting a large number of people attended and many requested to speak to the board concerning plaintiff's performance as coach. At that meeting, after meeting in executive session, the

board declared that it intended to retain plaintiff as coach for the next school year but would hold him to a "code of conduct." Some parents were upset by the board's decision to implement a code of conduct instead of not renewing plaintiff's coaching contract.

About a month later, on April 22, 2008, Superintendent Brown met with plaintiff and told him he had decided to let plaintiff go. Plaintiff testified in his deposition that at this point "I said, Why? He told me that they, meaning Rich Kuecker and the bunch, wanted a younger coach, and I was just too old school." Brown told plaintiff he was going to recommend to the board that plaintiff's contract as head boys' basketball coach not be renewed. Brown disputes he told plaintiff they were looking for a younger coach. Prior to this conversation with Brown, plaintiff had never heard from any source that they wanted a younger coach. Doug Lee, the president of the school board, had told plaintiff "they just don't like you." The board voted not to renew plaintiff's contract at its April 2008 board meeting.

A search committee was put in place to recommend a replacement coach. It ultimately recommended, and the District hired, Justin Remington. Remington's age was twenty-eight. Craig Buchanan, the general manager of a local car dealership, was a member of the search committee. After Remington was hired, Buchanan was quoted in a local newspaper as saying "We liked that he's a fairly young guy" and "[w]e think he can bring some new methods and new ways of teaching that the kids in the program can relate to." The search committee had no say in the decision to non-renew plaintiff's coaching contract.

Plaintiff's position as athletic director did not last long after his removal as basketball coach. According to defendants, at a meeting in September 2008, the school board took a straw poll of its members indicating that they were inclined, barring some change in position by some or all of the members, to not renew plaintiff's contract as athletic director when it expired at the end of the 2008-09 school year. The board directed members of the administration to create a different administrative job which could be offered to plaintiff, and he could accept, enabling him to continue working for the District until his retirement date, under the terms of his irrevocable letter of retirement, if the board did, in fact, vote to not renew him as athletic director. That vote would take place at the board meeting in March 2009. Administrator contracts are put to renewal votes each March.

At the March 18, 2009 meeting, the board did, in fact, vote not to renew plaintiff's contract as athletic director and to put him into the newly-created administrative position for the next school year. Prior to this meeting, by letter dated March 9, 2009 from the District's interim superintendent, plaintiff was advised that the interim superintendent was recommending non-renewal of his athletic director contract. The letter stated "the Board has lost confidence in you as Athletic Director due to your negative relationships with coaches, parents and the community." The letter went on to state: "The Board of Education is offering you the opportunity to meet with them in closed session on [March 17, 2009] to discuss and respond to the above recommendation and reasons for the recommendation. You may bring a representative of your choosing and other persons to speak on your behalf." Plaintiff chose not to participate in this offered meeting.

Plaintiff paints a different picture of the events. According to plaintiff, he had a four-year contract to serve as athletic director running from the beginning of the 2007-08 school year through his retirement at the end of the 2010-11 school year. At its September 2008 meeting, the school board voted to terminate this contract. He was given no notice that termination of his contract was going to be considered at the meeting and was given no opportunity to appear and be heard on the issue of his termination. After this meeting, the District began taking away his duties as athletic director. A "make work" administrative position was created for him to fill until his retirement. The March 9, 2009 letter from the interim superintendent recommending the non-renewal of his contract, the offered opportunity to meet with the board to discuss and respond, and the vote at the March 18, 2009 board meeting were all a sham because his contract had already been terminated by the board's action at its September 2008 meeting. These March 2009 actions were merely a pretense to give the appearance the board was following due process procedures when, in fact, the board's previous action in September 2008 had already denied him the job in which he had a property interest without due process of law.

To establish a claim under the ADEA, plaintiff must prove that age was the "but-for" cause of the decision not to renew his coaching contract. Gross v. FBL Fin Serv., Inc., __ U.S. __, 129 S.Ct. 2343, 2350 (2009). "[I]t's not enough to show that age was a motivating factor. The plaintiff must prove that, but for his age, the adverse action would not have occurred." Martino v. MCI Communications Serv., Inc., 574 F.3d 447, 455 (7th Cir. 2009) (emphasis in original). Plaintiff must show that "age was the determinative factor." Lindsey v. Walgreen Co., 615 F.3d 873, 876 (7th Cir. 2010) (emphasis in original). Plaintiff's claim that his age was the determinative factor ending his coaching

position rests entirely on his own deposition testimony that when Brown told plaintiff he was recommending his contract not be renewed he gave as the reason "they, meaning Rich Kuecker and the bunch, wanted a younger coach, and I was just too old school," and the newspaper story quoting a member of the new-coach-search committee saying of the new coach: "We liked that he's a fairly young guy."

It is undisputed that the search committee was constituted after plaintiff had been non-renewed and had nothing to do with plaintiff's non-renewal. There is no evidence that defendants directed or suggested to the committee that it recommend a coach who was younger than plaintiff or that defendants ever communicated to the committee that plaintiff's age was the reason (or even a factor) in his removal. The views of one member of the search committee, as quoted by a newspaper, about what he liked about the new coach, is no evidence of the reason plaintiff was not renewed.

This leaves plaintiff's testimony as to Brown's statement to him that "they, meaning Rich Kuecker and the bunch, wanted a younger coach, and I was just too old school." Plaintiff offers this as direct evidence that his age was the sole reason defendant did not renew his coaching contract. The question is whether this statement is sufficient evidence for a reasonable jury to conclude that but for plaintiff's age his coaching contract would have been renewed.

The undisputed evidence is that Rich Kuecker, a parent, lodged complaints about plaintiff's coaching style, sideline decorum and perceived detrimental conduct toward the team. He then published a letter in the newspaper airing these complaints and asking parents and students to contact the board of education to voice complaints about plaintiff. A large number of people attended a school board meeting concerning plaintiff's performance as coach and some of them were upset when the board did not decide at that meeting to end plaintiff's tenure as basketball coach. Age was never mentioned in any of these complaints. The complaints were about the manner in which plaintiff conducted himself as a coach. The school board president had told plaintiff that "they just don't like you." At the next month's school board meeting, the board voted not to renew plaintiff's coaching contract. Whether Brown thought "Rich Kuecker and the bunch" wanted a younger coach does not establish that the board decided not to renew plaintiff because of his age. No other evidence points to age as a factor. Substantial undisputed evidence shows public pressure about plaintiff's coaching methods was the reason. In light of the undisputed evidence, a reasonable jury could only conclude that age was not the but-for cause of plaintiff's non-renewal. See Martino, 574 F.3d at 455.

Plaintiff also claims he was terminated from his position as athletic director, a position in which he claims a protected property interest, without due process of law. Property interests are not created by the Constitution but by state law. Cole v. Milwaukee Area Technical College, No. 10-1332, 2011 WL 650715, *2 (7th Cir. Feb. 24, 2011). He claims a property interest because he believes he had a four-year contract extending through the 2010-11 school year. Plaintiff has not presented a written four-year contract. The evidence includes a one-year contract executed by plaintiff for the 2007-08 school year and another one-year contract executed by plaintiff for the 2008-09 school year. Illinois law provides that "school districts may only employ principals and other school administrators under either a contract for a period not to exceed one year or a performance-based contract for a period not to exceed 5 years." 105 ILCS 5/10-23.8a. It is undisputed plaintiff was a school administrator and did not have a performance-based contract.

Plaintiff testified in his deposition that one of the administrators at the central office told him he just needed to sign the one-year contracts as protocol. Plaintiff submitted an affidavit in which he identified another administrator, Andrew Bullock who has a three-year contract but "signs a one-year agreement establishing his assigned position and benefits for that school year." However, he does not present Bullock's written three-year contract nor any evidence that it is not performance-based.[1] Plaintiff does submit his irrevocable letter of retirement, which defendants do not dispute was accepted, but this letter says nothing about plaintiff being entitled to the position of athletic director. Plaintiff references a letter from Brown referencing the acceptance of his notice of retirement but that letter makes no mention of the athletic director position.

Plaintiff also references the school board minutes of the meeting where his retirement notice was accepted. These minutes simply list plaintiff's name under the heading "retirement" and state: "Athletic Director, Dixon High School, effective the end of the 2010-11 school year contract." This language cannot reasonably be construed as an agreement to employ plaintiff as athletic director for a four-year term. Moreover, plaintiff offers no authority to support a claim he has a legal right under Illinois law to enforce a non-performance-based, multi-year contract entered in direct contravention of the Illinois School Code provision quoted above. Without such a contractual right, plaintiff fails to establish a protected property interest in the athletic director's position after the 2008-09 school year and, therefore, has no due process claim for subsequent school years.

## STATEMENT - OPINION

   Plaintiff contends he was effectively deprived of the athletic director position during the 2008-09 school year because the District began taking away his responsibilities during that time period. However, any contractual right creating a property interest for a school administrator creates a property interest in the "office's emoluments but not the office itself." Batagiannis v. West Lafayette Community School Corp., 454 F.3d 738, 740 (7th Cir. 2006). Assuming plaintiff possessed such a property interest for the 2008-09 school year, his interest only extended to the salary for the position – not the position itself. Id. It is undisputed plaintiff received his entire salary per his 2008-09 contract. As to compensation received beyond his contractual salary, plaintiff's affidavit shows he received more extra compensation ($1350.00) for the 2008-09 school year than he had for any previous year. Accordingly, plaintiff received all the "emoluments" of the athletic director's position in the 2008-09 school year.

   For the foregoing reasons, defendants' motion for summary judgment is granted on all counts. Other arguments for summary judgment by defendants need not be discussed. Judgment is entered in favor of defendants and against plaintiff on all counts. All pending motions are denied as moot. This case is terminated.

1. Plaintiff's affidavit is inadmissible hearsay as to this issue anyway as is his deposition testimony about what an unidentified administrator told him about the one-year contracts he signed.